575 A.2d 1227
**STATE of Maryland**
v.
**James Leon ANDERSON.**
**No. 137, Sept. Term, 1988.**
Court of Appeals of Maryland.
July 2, 1990.

Cathleen C. Brockmeyer, Asst. Atty. Gen., J. Joseph Curran, Jr., Atty. Gen., both on brief, Baltimore, for petitioner.

Gary S. Offutt, Asst. Public Defender, Alan H. Murrell, Public Defender, both on brief, Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS, JJ., and BLACKWELL *, J. (retired).

ELDRIDGE, Judge.

The defendant-respondent, James Leon Anderson, and the victim, George Ford, had been playing cards one evening at someone else's house in Baltimore City. They left the card game together, and Ford offered Anderson a ride home in Ford's automobile. According to Ford's testimony at the trial below, Ford entered the vehicle on the driver's side, reached across and opened the door on the passenger's side, and then started the vehicle. As soon as he started the vehicle, he heard "a big noise in the car" and "thought that the car had blown up." Next, his arm and his leg "got numb," and he saw the defendant Anderson running down the street. Anderson had not entered the car after the door on the passenger side had been opened. Ford "felt" that his side was wet, reached down with his hand, and saw blood on his hand. Ford exclaimed: "He shot me." At no

---

* Blackwell, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

time during the incident, however, did Ford see a gun. Ford was hospitalized for eight to ten weeks because of his injury.

Anderson was charged in the District Court of Maryland, sitting in Baltimore City, with attempted murder, use of a handgun in the commission of a crime of violence in violation of Maryland Code (1957, 1987 Repl.Vol.), Art. 27, § 36B(d), wearing or carrying a handgun in violation of Art. 27, § 36B(b), and discharging a firearm in Baltimore City in violation of Art. 19, § 112, of the Baltimore City Code.

At the District Court trial, in addition to Ford's testimony set forth above, the investigating policeman testified that Ford had been "shot in the torso area" on the "right side." He also testified that the "bullet hole" was small. No bullet, however, was found. Furthermore, there was no medical or other expert testimony concerning the nature or cause of the wound. At one point during Ford's testimony, Ford speculated that Anderson "shot" him because Ford had taken five dollars from a pool of money which Anderson had won in the card game. Ford stated that Anderson had owed him five dollars from the previous week.

Following the presentation of the evidence at the trial, and during argument of counsel, the district judge indicated that he was concerned about the absence of evidence regarding the weapon and the absence of a bullet. At one point, the judge speculated that the wound might have been caused by something other than a bullet.

Nevertheless, after argument by counsel, and based on the circumstances and the victim's testimony which the district judge stated that he believed, the judge rendered verdicts that Anderson was guilty of attempted murder and not guilty of the "handgun charges." The court thus stated:

"Court: Well, I think, I think the state of, I believe the, the testimony of the victim and I was not dissuaded in any way by the inconsistencies that were brought out

because of the police report. I found those inconsistencies to be explainable. I think, because of the fact, there was no actual evidence of the handgun being fired, but the fact that no one saw the handgun, they just heard a noise, although the, an apparent bullet hole is there, is going to make for an inconsistent verdict. I believe that the State presented enough to, to convict on the attempted murder and verdict will be guilty. As to the handgun charges, the verdict's not guilty."

Nothing specifically was said concerning the charge of discharging a firearm in Baltimore City. On the verdict sheets signed by the judge, however, a "not guilty" verdict was entered with respect to discharging a firearm in Baltimore City. Later a motion to set aside the attempted murder verdict was denied, and a sentence of 30 years imprisonment was imposed for attempted murder.

Anderson took an appeal to the Circuit Court for Baltimore City. As there was no consent between the parties that the appeal would be on the District Court record, the appeal was scheduled to be heard as a trial de novo in the circuit court. Maryland Code (1974, 1989 Repl.Vol.), § 12–401(d) of the Courts and Judicial Proceedings Article.[1]

Prior to the hearing of the appeal de novo, Anderson filed in the circuit court a motion to dismiss the attempted murder charge. The theory of the motion was that the district judge had rendered inconsistent verdicts, that the findings underlying the acquittals on the handgun and firearm charges precluded a conviction on the attempted murder charge, and that an appeal de novo in the circuit

---

1. Section 12–401(d) provides as follows:
   "(d) *De novo and on record appeals.*—In a civil case in which the amount in controversy exceeds $2,500 exclusive of interest, costs, and attorney's fees if attorney's fees are recoverable by law or contract, and in any case in which the parties so agree, an appeal shall be heard on the record made in the District Court. In every other case, including a criminal case in which sentence has been imposed or suspended following a plea of nolo contendere or guilty, and an appeal in a municipal infraction or Code violation case, an appeal shall be tried de novo."

court on the attempted murder charge was barred by principles of collateral estoppel embodied in the double jeopardy prohibition.

After some initial procedural skirmishes, the circuit court granted the motion and dismissed the attempted murder charge. The circuit court explained as follows:

"You have a situation here where the defendant went to trial on the attempted murder, use of a handgun in the commission of a crime of violence, possession of a handgun and discharge of a handgun and even the Judge below recognized that the verdict was an inconsistent one. The fact of the matter is he found the Defendant not guilty of the handgun charges, he found him guilty of the attempted murder and that attempted murder was by way of shooting. It would seem to me that perhaps if the attempted murder and the evidence relating to the attempted murder was not by way of shooting then we would be in a somewhat different posture, but that's not the case here. The evidence adduced at trial below dealt with a shooting and even though the argument can be made that the acquittal on the use of the handgun charge certainly would not bar retrial on the attempted murder and again certainly it could be argued that acquittal on the possession of a handgun charge does not necessarily bar retrial on the attempted murder, I am constrained to see how acquittal on discharging of a firearm charge would not preclude on the attempted murder charge. It would seem to me that in order to prove the attempted murder under the facts and circumstances of this case the State is going to have to show that a weapon that is used to propel a bullet was used. That bullet was lodged in the victim in this case, hence there is—you have the gun by way of discharging that firearm—and he's already been acquitted of discharging of a firearm. Consequently, I am going to grant the motion to dismiss on the basis of double jeopardy and collateral estoppel."

The State filed a notice of appeal to the Court of Special Appeals. Thereafter, but within thirty days of the circuit

court's judgment, the State filed in this Court a petition for a writ of certiorari. The petition requested either the issuance of a writ of certiorari to the Court of Special Appeals pursuant to Code (1974, 1989 Repl.Vol.), §§ 12–201 and 12–302(c)(1) of the Courts and Judicial Proceedings Article or the issuance of a writ of certiorari to the Circuit Court for Baltimore City pursuant to § 12–305 of the Courts and Judicial Proceedings Article. This Court granted the State's petition and issued writs of certiorari both to the Court of Special Appeals and to the Circuit Court for Baltimore City.

## I.

██ The State, before addressing the merits of the circuit court's dismissal of the attempted murder charge, strenuously argues that it had a right to appeal from the circuit court's judgment to the Court of Special Appeals. The State claims that our jurisdiction vests under §§ 12–201 and 12–203 of the Courts and Judicial Proceedings Article, which authorize certiorari review by this Court of cases pending in the Court of Special Appeals.[2]

The State relies on § 12–302(c)(1) of the Courts and Judicial Proceedings Article which provides as follows:

---

**2.** Section 12–201 states as follows:

"Except as provided in § 12–202 of this title, in any case or proceeding pending in or decided by the Court of Special Appeals upon appeal from a circuit court or an orphans' court or the Maryland Tax Court, any party, including the State, may file in the Court of Appeals a petition for certiorari to review the case or proceeding. The petition may be filed either before or after the Court of Special Appeals has rendered a decision, but not later than the time prescribed by the Maryland Rules. In a case or proceeding described in this section, the Court of Appeals also may issue the writ of certiorari on its own motion."

Section 12–203 provides in relevant part as follows:

"If the Court of Appeals finds that review of the case described in § 12–201 is desirable and in the public interest, the Court of Appeals shall require by writ of certiorari that the case be certified to it for

24

"(c) In a criminal case, the State may appeal as provided in this subsection.

(1) The State may appeal from a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition."

The State contends that § 12–302(c)(1) is not limited to criminal cases where a circuit court was exercising jurisdiction as a trial court. The State insists that § 12–302(c)(1) also authorizes the State to appeal from a circuit court judgment dismissing a charging document when the circuit court is exercising appellate jurisdiction over a criminal case which was initially tried in the District Court. We disagree with the State's position.

The basic right of a party to appeal from a final circuit court judgment is set forth in § 12–301 of the Courts and Judicial Proceedings Article which provides in pertinent part as follows:

"Except as provided in § 12–302, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court...."

Section 12–302 of the Courts and Judicial Proceedings Article, however, lists six "exceptions" to § 12–301. The first exception covers the present case. Section 12–302 provides in relevant part as follows:

"§ 12–302. Same—Exceptions.

(a) Unless a right to appeal is expressly granted by law, § 12–301 does not permit an appeal from a final judgment of a court entered or made in the exercise of appellate jurisdiction in reviewing the decision of the District Court...."

Subsections (b) through (f) contain the remaining exceptions. The limitations upon the State's right to appeal final circuit court judgments in criminal cases are contained in subsection (c). Subsection (c)(1) authorizes the State to

review and determination. The writ may issue before or after the Court of Special Appeals has rendered a decision."

.   .   .   .   .

appeal from a final judgment granting a motion to dismiss a charging document.

The State's theory is that § 12–302(c) constitutes an independent provision of law authorizing the State to appeal in criminal cases, and, as such, "subsection (c) provides the exception to Section 12–302(a), thereby providing a right of appeal for the State for cases originating in District Court." (Petitioner's brief, p. 7).

The flaw in the State's theory is that § 12–301 is the statute authorizing either party to appeal from final circuit court judgments in criminal as well as civil cases.[3] As the language of § 12–301 and the heading of § 12–302 make clear, the subsections of § 12–302 simply set forth the "exceptions" to the right of appeal conferred by § 12–301. The State's right of appeal is conferred by § 12–301. It is then limited by all of the exceptions set forth in § 12–302. Subsection (a) of § 12–302 limits for all parties the § 12–301 right of appeal by excluding circuit court final judgments entered "in the exercise of appellate jurisdiction in reviewing the decision of the District Court...." Subsection (c) of § 12–302 additionally limits, in criminal cases, the State's § 12–301 right of appeal to those situations specified in subsection (c).

Although the State's appeal to the Court of Special Appeals in this case was not precluded by the limitations contained in § 12–302(c), it was precluded by the limitation contained in § 12–302(a).

Our construction of §§ 12–301 and 12–302 is reinforced by § 12–305 which states in relevant part:

---

**3.** Prior to the enactment of § 12–301, effective January 1, 1974, the basic statute granting a right to appeal from final circuit court judgments did not encompass criminal cases. *See* Code (1957, 1968 Repl.Vol.), Art. 5, § 1. The right to appeal in criminal cases was conferred by other statutes. *See* Code (1957, 1968 Repl.Vol.), Art. 5, § 12 *et seq.* Section 12–301 of the Courts and Judicial Proceedings Article was intended to consolidate several prior statutes, including Art. 5, § 1 and § 12. *See* Revisor's Note to § 12–301 in the 1974 edition of the Courts and Judicial Proceedings Article.

"The Court of Appeals shall require by writ of certiorari that a decision be certified to it for review and determination in any case in which a circuit court has rendered a final judgment on appeal from the District Court ... if it appears to the Court of Appeals, upon petition of a party that:

.    .    .    .    .

"(2) There are ... special circumstances rendering it desirable and in the public interest that the decision be reviewed."

See also § 12–307(2), vesting jurisdiction in the Court of Appeals "to review a case or proceeding decided by a circuit court, in accordance with § 12–305 of this Article." Sections 12–305 and 12–307(2) are the only provisions of the Courts and Judicial Proceedings Article expressly authorizing further review of circuit court final judgments rendered in cases on appeal from the District Court, and they provide that there shall be discretionary review by the Court of Appeals and not an appeal to the Court of Special Appeals. As recently pointed out by Chief Judge Murphy for the Court in State v. Jefferson, 319 Md. 674, 678 n. 1, 574 A.2d 918, 919 n. 1 (1990), "[t]he Court of Appeals, not the Court of Special Appeals, has the authority to review cases 'in which a circuit court has rendered a final judgment on appeal from the District Court.' § 12–305." But cf., Legal Aid Bureau v. Farmer, 74 Md.App. 707, 709–714, 539 A.2d 1173 (1988).

Consequently, the State was not entitled to appeal to the Court of Special Appeals in this case. Thus, we can not decide the merits of the State's appeal under the writ of certiorari issued to the Court of Special Appeals pursuant to §§ 12–201 and 12–203 of the Courts and Judicial Proceedings Article. We shall dismiss the State's appeal.

■ On the other hand, as previously mentioned, the State alternately petitioned for a writ of certiorari to the Circuit Court for Baltimore City pursuant to § 12–305 of the Courts and Judicial Proceedings Article. As we be-

lieved that the circuit court's dismissal of the attempted murder charge presented an issue of public importance, we also issued a writ of certiorari to the circuit court. We can reach the merits of the circuit court's dismissal under that writ.

## II.

Relying upon *Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984), the State's principal argument on the merits is that "double jeopardy based upon a proceeding in the District Court can never be a bar to de novo proceedings in the circuit court." (Petitioner's brief, p. 9). Alternatively, the State appears to argue that an examination of the District Court's statements shows that the District Court did not make findings inconsistent with the attempted murder charge or which would require resolving the attempted murder charge in Anderson's favor. Again we do not concur with the State's principal argument, but we shall decide in favor of the State essentially on the alternate ground.

*Justices of Boston Municipal Court v. Lydon, supra,* dealt with the particular double jeopardy principle enunciated in *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). The *Burks* case had "held that the Double Jeopardy Clause [of the Fifth Amendment] bars a second trial when a reviewing court reverses a conviction on the ground that the evidence presented at the first trial was legally insufficient." 466 U.S. at 298, 104 S.Ct. at 1808. The Supreme Court in *Lydon* held that the *Burks* principle had no application to "the trial *de novo* of respondent Lydon, pursuant to Massachusetts' 'two-tier' system for trying minor crimes...." 466 U.S. at 296–297, 104 S.Ct. at 1807.

There are major differences between the Massachusetts two-tier trial de novo system involved in *Lydon* and the Maryland system regarding appeals to circuit courts from

final District Court judgments in criminal cases.[4] Moreover, the Supreme Court in *Lydon* appeared to rely upon some features of the Massachusetts system not present in the Maryland system. Nevertheless, we shall assume that the holding in *Lydon* is applicable to a criminal appeal from the District Court of Maryland to a circuit court where the parties have not consented to an appeal on the record.

Nothing in the *Lydon* opinion, however, supports the State's broad contention that the double jeopardy prohibition "based upon a proceeding in the District Court can never be a bar to de novo proceedings in the circuit court." *Lydon* dealt only with the applicability of the *Burks* principle. No other component of the double jeopardy prohibition was involved. Moreover, the *Lydon* opinion itself appears to refute the State's broad argument, as the Supreme Court clearly indicated that the second tier de novo trial could not encompass any charges on which the defendant was acquitted at the initial trial. 466 U.S. at 307, 308, 311–312, 104 S.Ct. at 1813, 1815. This Court has flatly taken the position that, under the double jeopardy prohibition, the de novo appeal can not embrace a charge on which the defendant

---

4. Under the Massachusetts " 'two-tier' system for trying minor crimes" described in *Lydon,* a convicted defendant's "only recourse is a trial *de novo,*" and the trial de novo is before the jury session of the same court. 466 U.S. at 297–298, 104 S.Ct. at 1807–1808. In Maryland, the District Court has jurisdiction over quite serious crimes; the appeal is on the record if the parties consent, and the appeal goes to a different court exercising appellate jurisdiction. Under the Massachusetts system described by the Supreme Court, the application for a trial de novo vacates the initial judgment. 466 U.S. at 300, 310, 104 S.Ct. at 1809, 1814. This is not true in Maryland. The Supreme Court also viewed the initial Massachusetts proceeding and the trial de novo as " 'part of a single, continuous course of judicial proceedings....' " 466 U.S. at 309, 104 S.Ct. at 1814. Again this would not be an appropriate description of Maryland's system. With regard to the nature of appeals from the District Court of Maryland to the circuit courts in criminal cases, *see e.g., State v. Jefferson,* 319 Md. 674, 574 A.2d 918 (1990); *Telak v. State,* 315 Md. 568, 556 A.2d 225 (1989); *Harper v. State,* 312 Md. 396, 540 A.2d 124 (1988); *Stanton v. State,* 290 Md. 245, 428 A.2d 1224 (1981); *Briggs v. State,* 289 Md. 23, 421 A.2d 1369 (1980); *Lewis v. State,* 289 Md. 1, 421 A.2d 974 (1980); *Hardy v. State,* 279 Md. 489, 369 A.2d 1043 (1977).

was acquitted in the District Court. *Lewis v. State,* 289 Md. 1, 6, 421 A.2d 974 (1980). *See also Block v. State,* 286 Md. 266, 407 A.2d 320 (1979).

Neither *Lydon* nor any opinion of this Court decides whether the doctrine of collateral estoppel, as embodied in either the Fifth Amendment's Double Jeopardy Clause or the Maryland common law double jeopardy prohibition, would preclude a trial de novo on appeal as to one charge involving an issue of ultimate fact which was resolved against the State by a District Court acquittal on another charge in the same case. *See,* however, *Ferrell v. State,* 318 Md. 235, 243, 567 A.2d 937, *cert. denied,* —— U.S. ——, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990) (" 'the critical consideration is whether "an issue of ultimate fact" has been determined in favor of a defendant. The process by which that determination is made ... is not critical' "), quoting *Robinson v. State,* 307 Md. 738, 742, 517 A.2d 94, 96 (1986).

█ It is, however, settled in this State, as a nonconstitutional common law principle, that inconsistent verdicts of guilty and not guilty, by a trial judge at a nonjury trial, are not ordinarily permitted. *Hoffert v. State,* 319 Md. 377, 385 n. 2, 572 A.2d 536 (1990); *Shell v. State,* 307 Md. 46, 52–58, 512 A.2d 358 (1986); *Johnson, etc. v. State,* 238 Md. 528, 541–545, 209 A.2d 765 (1965).[5] The remedy is to reverse or vacate the judgment entered on the inconsistent guilty verdict. *Shell v. State, supra,* 307 Md. at 58, 512 A.2d at 364; *Johnson, etc. v. State, supra,* 238 Md. at 543, 209 A.2d at 772. *See United States v. Maybury,* 274 F.2d 899, 905 (2d Cir.1960). Where, however, there is an apparent inconsistency in the verdicts at a nonjury trial, but where the trial judge on the record satisfactorily explains the apparent

---

5. Inconsistent *jury* verdicts, on the other hand, are normally tolerated. *See, e.g., Hoffert v. State,* 319 Md. 377, 384, 572 A.2d 536 (1990); *Ferrell v. State,* 318 Md. 235, 249, 567 A.2d 937, *cert. denied,* —— U.S. ——, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990); *Wright v. State,* 307 Md. 552, 576, 515 A.2d 1157 (1986); *Shell v. State,* 307 Md. 46, 53–55, 512 A.2d 358 (1986); *Mack v. State,* 300 Md. 583, 593–595, 479 A.2d 1344 (1984); *Ford v. State,* 274 Md. 546, 551–553, 337 A.2d 81 (1975).

inconsistency, the guilty verdict may stand. *Shell v. State, supra,* 307 Md. at 56–57, 512 A.2d at 363–364; *Johnson, etc. v. State, supra,* 238 Md. at 544–545, 209 A.2d at 772. If "there is only an apparent inconsistency which in substance disappears upon review of the trial court's explanation," the guilty verdict will not be vacated. *Shell v. State, supra,* 307 Md. at 57, 512 A.2d at 363.

In our view, the present case is one where there is an apparent inconsistency in the District Court's verdicts which disappears upon review of the district judge's findings and explanation. Therefore, under the decisions in *Shell* and *Johnson,* inconsistency in the verdict furnished no proper basis for dismissing the attempted murder charge. Moreover, we shall assume, *arguendo,* that the doctrine of collateral estoppel would be applicable to prevent a de novo appeal on the attempted murder charge if the district judge's findings underlying the acquittals resolved in the defendant's favor a critical issue involved in the attempted murder charge. An examination of the district judge's findings demonstrates that he did not resolve in the defendant's favor an issue critical to the attempted murder prosecution.

The prosecution's theory underlying the attempted murder charge, as shown by the charging document, the arguments, and the testimony at the District Court trial, was that the defendant Anderson attempted to murder Ford by shooting him with a firearm. At no time did the prosecution limit its theory to attempted murder by a *handgun.* In addition, the trial judge's guilty verdict on the attempted murder charge was not premised upon the use of a handgun. The acquittals on the other charges, however, were based upon the district judge's view that the prosecution was required to prove that Anderson used a *handgun* within the meaning of Art. 27, § 36B, and that there was

insufficient proof that a handgun was used.[6]

Thus, following closing argument by the defense attorney and the prosecuting attorney, the district judge found that Ford's testimony constituted "sufficient evidence that he was shot." The question in the judge's mind was "had the State proved in any way that ... the victim was in fact shot with a handgun?" Thereafter, in rendering the verdicts, the district judge's statements explained that the verdicts on the handgun charges would be different from the verdict on the attempted murder charge because of the absence of evidence of a "handgun." After finding that the victim's testimony warranted a verdict of guilty of attempted murder, the judge went on:

"I think, because of the fact, there was no actual evidence of the handgun being fired, by the fact that no one saw the handgun, they just heard a noise, although the, an apparent bullet hole is there, is going to make for an inconsistent verdict. I believe that the State presented enough to, to convict on the attempted murder and verdict will be guilty. As to the handgun charges, the verdict's not guilty. Is there any other charge?

"State: Three other charges, Your Honor.

"Court: Are we going to proceed with the second case?

"State: May we have a moment to talk with the detective on that one, Your Honor?

6. Code (1957, 1987 Repl.Vol., 1989 Cum.Supp), Art. 27, § 36F(b), defines "handgun," for purposes of § 36B, as follows:

"(b) *Handgun.*—'Handgun' means any pistol, revolver, or other firearm capable of being concealed on the person, including a short-barreled shotgun and a short-barreled rifle as these terms are defined below, except it does not include a shotgun, rifle or antique firearm as those terms are defined below."

For further refinements concerning what is and what is not a "handgun" within the meaning of the above statute, *see, e.g., Howell v. State,* 278 Md. 389, 364 A.2d 797 (1976); *Wright v. State,* 70 Md.App. 616, 619–622, 522 A.2d 401 (1987); *Grant v. State,* 65 Md.App. 547, 554–556, 501 A.2d 475 (1985), *cert denied,* 306 Md. 70, 507 A.2d 184 (1986); *York v. State,* 56 Md.App. 222, 227–230, 467 A.2d 552 (1983), *cert. denied,* 299 Md. 137, 472 A.2d 1000 (1984); *Douglas v. State,* 37 Md.App. 557, 378 A.2d 189 (1977).

"Court: Yes.

"Defense: Judge.

"Court: I'm ready to take a break...."

It is clear that the district judge believed that evidence of a *handgun* was required for guilty verdicts on all of the charges except the attempted murder charge. His belief was correct with regard to the charges based on Art. 27, § 36B, of the Maryland Code. It may have been erroneous with regard to the charge of violating Art. 19, § 112, of the Baltimore City Code. Nevertheless, his actual findings satisfactorily explain the apparent inconsistency in verdicts and in no way resolve in the defendant's favor a critical issue underlying the attempted murder charge.

At the hearing on the defendant's motion to set aside the attempted murder verdict, the district judge reiterated that all of the acquittals were based upon the failure of the State to prove that a handgun, within the meaning of Art. 27, § 36B, was used. After the attorneys' arguments, the district judge stated that "I don't think there was sufficient evidence to ... substantiate use of a handgun ..." and that "[t]here is more strict proof required certainly for those ... statutory handgun offenses. That is what the court has found...." Later the judge again said that in

> "lots of cases where the evidence is just insufficient to prove handgun. You know, maybe the handgun wasn't described sufficiently. Certainly wasn't in this case. Lots of time when it was not a handgun, it could be a rifle...."

The district judge concluded by saying that "the State has just not been ... [able] for whatever reason to prove the handgun statute, but they prove[d] the substance of the crime."

As the district judge's statements satisfactorily resolved the apparent inconsistency in the verdicts, and as the judge's findings furnish no collateral estoppel basis for precluding a second trial for attempted murder, the circuit court erred in dismissing the attempted murder charge.

UNDER THE WRIT OF CERTIORARI ISSUED TO THE COURT OF SPECIAL APPEALS, APPEAL DISMISSED.

UNDER THE WRIT OF CERTIORARI ISSUED TO THE CIRCUIT COURT FOR BALTIMORE CITY, THE JUDGMENT OF THE CIRCUIT COURT IS REVERSED AND THE CASE IS REMANDED TO THAT COURT FOR A TRIAL DE NOVO ON THE CHARGE OF ATTEMPTED MURDER.

RESPONDENT TO PAY COSTS.