862 A.2d 404

**COUNTY COMMISSIONERS OF CARROLL COUNTY, Maryland**

v.

**CARROLL CRAFT RETAIL, INC. t/a Love Craft.**

**No. 21, Sept. Term, 2004.**

Court of Appeals of Maryland.

Dec. 3, 2004.

**24**

26

Terri A. Jones, Senior Asst. County Atty. for Carroll County (Kimberly A. Millender, County Atty. for Carroll County, Westminster), on brief for appellant.

Joseph S. Kaufman and Howard J. Schulman (Schulman & Kaufman, LLC, Baltimore), on brief for appellee.

Argued Before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

WILNER, Judge.

We granted *certiorari* in this case on our own initiative, prior to any definitive ruling by the Court of Special Appeals, in order to examine whether certain provisions in the Carroll County zoning law dealing with adult entertainment businesses are unconstitutionally vague and ambiguous. As is often the case when, on our own initiative, we opt to review a case still pending in the Court of Special Appeals, we had before us, when we granted the writ, only the appellant's brief

that had been filed in that court. After considering the subsequently filed appellee's brief, reviewing the record, and questioning counsel at oral argument, it has become plain that there is no appeal properly before us. We therefore have no choice but to dismiss the writ as improvidently granted.

This case has become a procedural nightmare, one that certainly was not apparent from the appellant's brief filed in the Court of Special Appeals. In order to identify what is, and is not, properly before us, we need to recount the procedural history in some detail, which, unfortunately, will make this Opinion more than a little tedious.

### BACKGROUND

Subject to specified sitting requirements—*i.e.,* minimum distances from certain enumerated structures or uses—the Carroll County Code permits an "adult entertainment business" in an IG General Industrial Zone, but in no other zone. *See* § 223–125E. The term "adult entertainment business" is defined in § 223–2 of the Code as an "adult movie theater" or an "adult store." The business at issue here is clearly not an adult movie theater but is alleged to be an adult store.

The term "adult store" is defined in § 223–2 as a business establishment that offers for sale or rental "any printed, recorded, photographed, filmed or otherwise viewable material, or any sexually oriented paraphernalia, if *a substantial portion of the stock or trade* is characterized by an emphasis on matters depicting, describing or relating to sexual activities." (Emphasis added). Section 223–2 defines "substantial portion," for purposes of that definition, as:

A. At least 20% of the stock in the establishment or on display consists of matters or houses devices depicting, describing or relating to sexual activities; or

B. At least 20% of the *usable floor area* is used for the display or storage of matters or devices depicting, describing or relating to sexual activities." (Emphasis added).

The term "usable floor area" is not defined in the ordinance.

On or about December 1, 2002, Carroll Craft Retail, Inc., trading as Love Craft, opened a retail store in a building

owned by Drs. Jogendra and Kirpal Singh, from which it sold sexually oriented paraphernalia and other items. The store was located in a General Business zone. On December 13, the acting zoning administrator, apparently believing that the operation constituted an adult store that was not permitted in a General Business zone, issued a violation notice to the Singhs and Love Craft. When the Singhs and Love Craft neither appealed the violation notice to the county board of appeals nor ceased or modified the operation, the county, on December 20, 2002, filed suit in the District Court of Maryland for Carroll County against them, claiming that they were operating or permitting the operation of an adult store in a B–G General Business zone, where an adult store is not permitted. The county sought both temporary and permanent injunctive relief to restrain the continued operation of the store.[1] In an answer and counter-claim, the defendants averred that the business was not an adult store because "a substantial portion of its stock or trade is not characterized by an emphasis on matters depicting, describing or relating to sexual activities" and that, in any event, because the term "substantial portion," as used in the ordinance, was vague, ambiguous, and overly broad, the ordinance unconstitutionally chilled the exercise of freedom of speech and was therefore invalid. In furtherance of their attack on the ordinance, the defendants, in their counter-claim, asked for a declaratory judgment that the ordinance was in violation of Articles 24 and 40 of the Maryland Declaration of Rights and the First and Fourteenth Amendments to the U.S. Constitution.[2]

---

**1.** Although the District Court does not have general equitable powers, Maryland Code, § 4–401(8) of the Cts. & Jud. Proc. Article gives it exclusive original jurisdiction over a petition filed by a county or municipality for the enforcement of local zoning (and certain other) codes for which equitable relief is provided. Section 223–195 of the Carroll County Code, dealing with the enforcement of the zoning laws, permits the county commissioners to seek injunctive relief to compel compliance.

**2.** In filing their counter-claim, appellees evidently overlooked the fact that the District Court has no jurisdiction to enter a declaratory judgment. *See* Maryland Code, § 4–402(c) of the Cts. & Jud. Proc.

After an evidentiary hearing, the District Court, on February 11, 2003, filed an opinion and order in which it found persuasive uncontradicted testimony by a county zoning inspector that between 50% and 60% "of the establishment" was being used for purposes prohibited in a general business zone and that the property was therefore being unlawfully used as an adult store. Upon that finding, it entered a permanent injunction restraining the three defendants—the Singhs and Love Craft—from operating the adult store. On February 19, within 10 days, the defendants filed a motion to alter or amend the judgment. That same day, the county, believing that the defendants had failed to bring their operation into conformance with the zoning requirement, filed a petition for contempt.

At a hearing on April 14, the court denied the motion to alter or amend the judgment. In an Opinion and Order filed on April 25, the court denied the contempt petition with respect to the Singhs, finding that the injunction did not require them to file a breach of lease action in order to evict their tenant. As to Love Craft, the court concluded that more than 20% of the of the usable floor area was being used for the display or storage of matters or devices depicting, describing or related to sexual activities, that the operation was therefore in violation of the injunction, but that Love Craft had made some effort to bring its operation in compliance with the zoning requirement. Instead of entering a finding of contempt, therefore, the court gave Love Craft 14 days in which to bring the operation into full compliance.

---

Article ("The District Court does not have jurisdiction to render a declaratory judgment."); *also* Maryland Code, § 3–403(a) of the Cts. & Jud. Proc. Article (*"Except for the District Court*, a court of record within its jurisdiction may declare rights, status, and other legal relations . . . .") (Emphasis added). The District Court informed Love Craft at the January 27, 2003 evidentiary hearing that it did not think it had jurisdiction to issue declaratory relief and made a handwritten notation on the pleading that the counter-claim was dismissed. We are unable to find any docket entry confirming that notation. If the counter-claim was not separately dismissed, it was effectively resolved by the ultimate judgment entered by the District Court.

On May 9, 2003, Love Craft filed an appeal to the Circuit Court for Carroll County, and on May 30, 2003, it filed a separate complaint for declaratory and injunctive relief which, with some exceptions, was a copy of the complaint previously filed in the District Court.[3] The appeal seeking *de novo* review of the District Court judgment and the complaint for declaratory and injunctive relief were founded on the same premise but were separate actions and were properly treated as such; the appeal was docketed as Case No. 06–C–03–03859, and the complaint was docketed as Case No. 06–C–03–038720. The county filed a motion for summary judgment and an accompanying memorandum in the declaratory judgment action, in which it argued that the ordinance was Constitutional, but the county did not seek any affirmative declaratory judgment to that effect.

■ At a hearing held on August 4, 2003, the court (1) on motion of the county, formally consolidated the two cases and

---

**3.** There were two departures from the declaratory relief improperly sought in the District Court, one of which injected more than a little confusion. The counter-claim in the District Court asked for a declaration that "the Carroll County Adult Entertainment Law" was in violation of Articles 24 and 40 of the Maryland Declaration of Rights and the First and Fourteenth Amendments to the U.S. Constitution. The complaint for declaratory relief filed in the Circuit Court asked "[t]hat this Court issue a declaration that the *Hagerstown Adult Bookstore Law* is in violation of Article 40 of the Maryland Declaration of Rights." (Emphasis added). No complaint was made with respect to the Federal Constitution. Giving counsel the benefit of the doubt in light of the allegations in the Complaint, we assume that the intended reference in the prayer for relief was to the Carroll County Adult Bookstore Law. Although the Declaratory Judgment Act, Maryland Code, § 3–409(c) of the Cts. & Jud. Proc. Article, permits a party to obtain a declaratory judgment "notwithstanding a concurrent common-law, equitable, or extraordinary legal remedy," we have made clear on a number of occasions that "[a]s a general rule, courts will not entertain a declaratory judgment action if there is pending, at the time of the commencement of the action for declaratory relief, another action or proceeding involving the same parties and in which the identical issues that are involved in the declaratory action may be adjudicated." *See Waicker v. Colbert,* 347 Md. 108, 113, 699 A.2d 426, 428 (1997) and cases cited therein. Given the pendency of the appeal from the District Court raising precisely the same issues as the declaratory judgment action, the declaratory judgment action was unnecessary and inappropriate.

identified the appeal from the District Court (03859) as the lead case; (2) dismissed the Singhs as parties;[4] and (3) reserved ruling on the county's motion for summary judgment. On August 8, the court filed a memorandum opinion in which it concluded that the ordinance—in particular the term "usable space"—was unconstitutionally vague. In an accompanying order, it struck "any previous rulings or injunctions prohibiting Love Craft from operating their store" and determined that Love Craft "is not subject to any fines for not obeying the previous injunction." Although the order does not expressly reverse the District Court judgment, that is certainly its effect, and we shall treat it as achieving that result. The memorandum makes clear that the matter upon which the court acted was the appeal from that judgment and not the declaratory judgment case.

It is at this point that the more important procedural glitches begin to appear. The Circuit Court order was docketed August 11, 2003. On August 29, the county noted an appeal to the Court of Special Appeals. That court docketed the appeal as No. 1376, Sept. Term 2003. Both parties, at least initially, understood that the appeal was solely from the order dissolving the District Court injunction and not from any ruling made in the declaratory judgment action which was, as yet, formally unresolved in the Circuit Court. The pre-hearing information reports filed by both the county and Love Craft with the Court of Special Appeals describe the Circuit Court action as an appeal from the District Court. Love Craft's report describes the judgment as "Reversing District Court Order."

■ On September 9, 2003, Love Craft filed a motion in the Circuit Court to dismiss or strike the appeal, contending that (1) as the action in the Circuit Court was an appeal from the

---

4. Although the Singhs did not appeal the District Court judgment, the case in the Circuit Court was docketed as *County Commissioners v. Jogendra Singh, et al.,* probably because the record transmitted by the District Court showed the Singhs as the lead defendants. The county did not oppose the motion to dismiss the Singhs from the Circuit Court case.

District Court, no appeal lay to the Court of Special Appeals from the judgment of the Circuit Court, and (2) to the extent the county was appealing from the refusal of the Circuit Court to hold Love Craft in contempt, no appeal lay from such an order. On September 18, Love Craft filed an identical motion in the Court of Special Appeals. The county, apparently confused as to (1) the nature and effect of a consolidation of two independent actions, (2) the fact that, even when entertaining a *de novo* appeal from the District Court, the Circuit Court nonetheless exercises appellate, not original, jurisdiction, and (3) the actual basis of Love Craft's motions, averred in response that, because the declaratory judgment action was still pending in the Circuit Court, no final judgment had been entered in that court, that the county's appeal was from the dissolution of the District Court injunction, and that, under § 12–303 of the Cts. & Jud. Proc. Article, an interlocutory appeal was permissible from such an order. Alternatively, the county argued that, in entertaining a *de novo* appeal from the District Court, the Circuit Court exercised original, not appellate jurisdiction, and that the judgment entered in the District Court appeal constituted a judgment as well in the declaratory judgment action, over which the Circuit Court had also exercised original, not appellate, jurisdiction. On either of these alternative bases, it claimed, the judgment was appealable under Cts. & Jud. Proc. Article, § 12–301.[5]

---

**5.** Cases do not lose their separate status merely because they are consolidated for processing and trial. A judgment entered in one case, if otherwise final, does not lose its status as a final judgment because judgment has not been rendered in another case with which it had been consolidated. The judgment becomes appealable, as a final judgment, when it is properly entered. *See Yarema v. Exxon Corp.*, 305 Md. 219, 236, 503 A.2d 239, 248 (1986); *Unnamed Atty. v. Attorney Griev. Comm'n*, 303 Md. 473, 484, 494 A.2d 940, 945 (1985); *Coppage v. Resolute Insur. Co.*, 264 Md. 261, 263–64, 285 A.2d 626, 628 (1972). The appeal from the judgment entered in the District Court appeal was from a final judgment entered in that case. It was not an interlocutory appeal under § 12–303 of the Cts. & Jud. Proc. Article from the dissolution of the injunction. Love Craft's point was that, because the Circuit Court was, itself, acting as an appellate court, no further appeal of right was permissible from its judgment. *See* Maryland Code, § 12–302(a) of the Cts. & Jud. Proc. Article. That is a matter we shall discuss

On October 9, 2003, the Circuit Court granted the motion to dismiss filed in that court and struck the notice of appeal. Love Craft immediately informed the Court of Special Appeals that the appeal had been dismissed in the Circuit Court, and, on October 16, 2003, it sent a copy of the Circuit Court's order to that effect to the Court of Special Appeals. Presumably upon that information, the appellate court took no immediate action on the motion filed with it but apparently assumed, at that point, that the appeal had already been dismissed.

Although, for reasons we shall describe, the Circuit Court had no authority to strike the notice of appeal on the grounds presented by Love Craft, the county never filed an appeal from that order, as it clearly had a right to do. *See Sullivan v. Insurance Comm'r*, 291 Md. 277, 284, 434 A.2d 1024, 1028 (1981). Accordingly, after 30 days, that order became final. The county's appeal to the Court of Special Appeals had effectively, even if improperly, been dismissed, and the record was never transmitted to the appellate court in accordance with the Rules and normal procedure. It remained in the Circuit Court.

As noted, on July 24, 2003—prior to the consolidation of the two cases—the county had filed a motion for summary judgment in the declaratory judgment action (038270). On October 15, 2003, the county got around to filing an answer to the complaint in that action. Love Craft then moved to strike the county's answer or, in the alternative, to dismiss the action, which *it* had filed, as moot. The motion was based on the assertion that the issues raised in the declaratory judgment action had been resolved by the judgment entered in the District Court appeal and that, with the dismissal of the appeal in that case to the Court of Special Appeals and the failure of the county to appeal from the order of dismissal, the judgment was final. On December 18, 2003, the Circuit Court granted that motion, struck the county's answer to the complaint, and dismissed the action as moot. On January 15,

---

further. The county's alternative argument, that the judgment also resolved the declaratory judgment action finds no support in the record.

2004, the county noted an appeal from that order. That appeal was docketed in the Court of Special Appeals as No. 2561, Sept. Term, 2003.

On January 13, 2004, prior to the noting of that second appeal, the Court of Special Appeals finally acted on the motion to dismiss Appeal No. 1376 that had been filed on September 18, 2003 and that was then moot because the appeal had already been stricken by the Circuit Court. Apparently in some doubt as to whether the appeal had, in fact, been stricken, the court denied the motion to dismiss without prejudice to the appellee raising the issue again in its brief. Love Craft responded with a motion to strike that order, in which it (1) iterated its argument that, because the Circuit Court judgment was entered in an appeal from the District Court, the Court of Special Appeals had no jurisdiction to entertain the county's appeal from that judgment, and (2) again asserted that the appeal had already been dismissed by the Circuit Court and that, as no appeal had been taken from that order, it was final and unreviewable. The county answered the motion with the same arguments it had made in response to the motion to dismiss. On March 18, 2004, the Court of Special Appeals denied the motion to strike the January 13 order, thus leaving the already-dismissed appeal facially alive.

This already-confusing state of affairs got worse when the county's appeal from the dismissal of the declaratory judgment action was docketed as No. 2561, Sept. Term, 2004 in the Court of Special Appeals. As noted, that action had been filed by Love Craft, not the county, and it was dismissed on Love Craft's motion immediately upon the striking of the county's belated and untimely answer to the complaint.[6] Nonetheless,

---

6. With exceptions not relevant here, Maryland Rule 2–321(a) requires a party to file an answer to an original complaint within 30 days after service. The clerk of the court entered an order giving the county 60 days after service to file an answer. Service was made on June 5, 2003. Under the Rule, an answer was due July 7, the Monday following the thirtieth day; under the order, an answer was due August 4. As noted, the answer was not filed until October 15, 2003. Nonetheless, as Love

the declaratory judgment action was within the original and exclusive jurisdiction of the Circuit Court, and, subject to other defenses, any final judgment entered in such an action would be appealable to the Court of Special Appeals. Complicating the matter even further, Love Craft, on February 23, 2004, filed a petition in the Circuit Court, in the District Court appeal case (038589), for attorney's fees based on its victory in that appeal. The petition, brought pursuant to 42 U.S.C. § 1988, sought $19,953 in fees and expenses. On May 11, 2004, the court granted the motion and entered judgment against the county for the $19,953 requested. On May 21, 2004, the county noted an appeal from that judgment. That appeal was docketed by the Court of Special Appeals as No. 643, Sept. Term, 2004.

Thus it was that the Court of Special Appeals had before it (1) Appeal No. 1376, which had been erroneously but nonetheless effectively dismissed by the Circuit Court but which the Court of Special Appeals considered as still pending, (2) Appeal No. 2561, from the dismissal of the declaratory judgment action, and (3) Appeal No. 643, from the judgment for attorney's fees entered in the District Court appeal case. On May 14, 2004, unaware of the appeals in Nos. 2561 and 643 and unaware as well of the unappealed Circuit Court order dismissing No. 1376, this Court granted *certiorari* to the Court of Special Appeals in Appeal No. 1376, which we docketed as No. 21, Sept. Term, 2004. That is the case now before us.

That triggered action by the Court of Special Appeals in Nos. 2561 and 643. On June 24, 2004, the Court of Special Appeals entered an order in those appeals stating that it appeared from the docket entries that those appeals emanated from judgments of the Circuit Court rendered in the exercise of that court's appellate jurisdiction and directing the parties to show cause why those appeals should not be transferred to this Court pursuant to Cts. & Jud. Proc. Article, § 12–302(a)

Craft did not seek to strike the answer on the ground of untimeliness, that issue is now moot.

and Maryland Rule 8–132. The county, in response, urged that both appeals be transferred to this Court, and consolidated with Case No. 21 pending before this Court. In No. 2561, the county continued to argue that, because the Circuit Court order entered in the District Court appeal did not also resolve the declaratory judgment action, it was not a final judgment under Cts. & Jud. Proc. Article, § 12–301 but could be, and was, immediately appealed under § 12–303. The county did not mention the dismissal of that appeal by the Circuit Court. In Appeal No. 643—the judgment for attorney's fees—the county averred that the Circuit Court was acting in its original jurisdiction, that the judgment was therefore appealable, but that the appeal should be transferred and consolidated with Case No. 21.

Love Craft, of course, took a different position. In both cases, it argued that, because that case "arose out of and/or was consolidated with" with the District Court appeal, the Court of Special Appeals had no jurisdiction over it and therefore no authority to transfer it to this Court. It urged further that, as no petition for *certiorari* had been filed, the county had waived its right to review in this Court. Unimpressed with Love Craft's argument, the Court of Special Appeals, on August 17, 2004, transferred Nos. 2561 and 643 to this Court. In response to that order, the county, on October 13, 2004 filed petitions for *certiorari* in the two cases.[7] In Petition No. 324, applicable to the declaratory judgment action (Appeal No. 2561), the county stated the Question Presented as whether the Circuit Court erred as a matter of law in

---

7. We have treated an order of the Court of Special Appeals transferring a case to us pursuant to Maryland Rule 8–132 as a petition for *certiorari*, but, because the order, quite properly and understandably, does not usually give any reasons why we should accept the case and therefore does not comply with the normal requirements for a petition for *certiorari* under Maryland Rule 8–303(b), we require the appellant/petitioner to supplement the order with a petition that *does* comply with the Rule. Rule 8–302, which prescribes the time for filing a petition for *certiorari*, does not specifically address the time for supplementing a transfer order with a compliant petition. In these cases, the Clerk of this Court directed the county to file any supplement by October 14, 2004.

failing to allow the county "to defend its Zoning Ordinance in the declaratory ruling action and in summarily finding the [county] ordinance unconstitutional based on vagueness and ambiguity[.]" In Petition No. 325, applicable to the judgment for attorney's fees in the District Court appeal, the Question Presented is whether the Circuit Court "ha[d] authority to award attorney's fees pursuant to 42 U.S.C. § 1988 where no federal claim was raised by any party[.]" Those petitions have not been granted and, indeed, had not even been filed when this case was argued on October 5, 2004.

## DISCUSSION

As is evident from our discussion of the procedural history, this case is laced with erroneous rulings, assumptions, and arguments. It also suffers from a serious, and determinative, procedural lapse on the part of the county—the failure to note an appeal from the erroneous dismissal of its appeal in Appeal No. 1376.

 As we have indicated in n. 5 above, the District Court appeal and the complaint for declaratory relief were separate actions in the Circuit Court, and they did not lose their status as separate actions simply because they were consolidated. It is clear from the record, it was clear to the parties, and it was clear to the Circuit Court that the judgment entered by the Circuit Court on August 11, 2003 pertained only to the District Court appeal and not to the declaratory judgment action, which remained pending and unresolved in the Circuit Court.[8] That judgment, although it could have been more clearly expressed, was effectively a reversal of the District Court judgment, and it became a final judgment in that case when docketed.

8. At the hearing conducted on August 4, 2003, the court noted that, because the county had not yet filed an answer to the complaint for declaratory judgment, it was unable to act on the motion for summary judgment the county had filed in that case.

■ Maryland Code, § 12–301 of the Cts. & Jud. Proc. Article, provides that "[e]xcept as provided in § 12–302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court." Section 12–301 further provides that the right of appeal exists "from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, *unless in a particular case the right of appeal is expressly denied by law.*" (Emphasis added). Section 12–302 enumerates certain exceptions to appealability under § 12–301. The first of those exceptions, stated in § 12–302(a), is, in relevant part, that "[u]nless a right to appeal is expressly granted by law, § 12–301 does not permit an appeal from a final judgment of a court entered or made in the exercise of appellate jurisdiction in reviewing the decision of the District Court." We know of no express right of appeal otherwise given to the county to appeal from a judgment of a Circuit Court reversing a District Court judgment entered in a zoning enforcement action. Further appellate review of a judgment entered by a Circuit Court in the exercise of its appellate jurisdiction to review judgments of the District Court is provided only by §§ 12–305 and 12–307(2). Section 12–305 provides:

> The Court of Appeals shall require by writ of certiorari that a decision be certified to it for review and determination in any case in which a circuit court has rendered a final judgment on appeal from the District Court ... upon petition ... that:
>
> (1) Review is necessary to secure uniformity of decision, as where the same statute has been construed differently by two or more judges; *or*
>
> (2) There are other special circumstances rendering it desirable and in the public interest that the decision be reviewed.

(Emphasis added). Section 12–307(2) supplements § 12–305 by conferring jurisdiction on this Court "to review a case or proceeding decided by a circuit court, in accordance with § 12–305 of this subtitle."

In *State v. Anderson*, 320 Md. 17, 26, 575 A.2d 1227, 1231 (1990), we construed these provisions and made clear that §§ 12–305 and 12–307(2)

> are the only provisions of the Courts and Judicial Proceedings Article expressly authorizing further review of circuit court final judgments rendered in cases on appeal from the District Court, and they provide that there shall be discretionary review by the Court of Appeals and not an appeal to the Court of Special Appeals.

In conformance with that holding, we determined that, as no appeal from such a judgment lay to the Court of Special Appeals, this Court had no authority to review the Circuit Court judgment under a writ of *certiorari* issued to the Court of Special Appeals, and, accordingly, notwithstanding that this Court *had* issued such a writ in that case, the appeal had to be dismissed. *Id.*, 575 A.2d at 1231.

■ In light of *Anderson*, which followed a similar pronouncement in *State v. Jefferson*, 319 Md. 674, 678 n. 1, 574 A.2d 918, 919 n. 1 (1990), it is clear that the county had no right to appeal the judgment entered in the District Court appeal to the Court of Special Appeals. It does not matter that the case was tried *de novo* in the Circuit Court. That does not alter the fact that the Circuit Court was exercising appellate, rather than original, jurisdiction.[9] What the county should have done was to file a petition for *certiorari* with this Court in conformance with Maryland Rules 8–302 and 8–303. It did not do so.

That does not end the matter, however. Traditionally, if an action, including an appeal, was filed in a court that had no authority to hear it, the normal response was for the court to

---

9. Indeed, the Circuit Court could *only* have been exercising appellate jurisdiction, as it had no original jurisdiction over the case. As noted above, § 4–401(8) of the Cts. & Jud. Proc. Article confers on the District Court "exclusive original civil jurisdiction" over a petition by a county to enforce a zoning code for which equitable relief is provided. The county's enforcement action in this case could not have been brought in the Circuit Court initially.

dismiss the action or appeal. By Rule, however, this Court has softened that approach, at least in certain settings, by allowing the court in which the action or appeal has been improperly filed to transfer it to a court in which it could properly have been filed. Maryland Rule 2–327(a) provides that, if an action within the exclusive original jurisdiction of the District Court is filed in a Circuit Court, the Circuit Court *may*, in lieu of dismissing the action for want of jurisdiction, transfer it to the District Court so that it may proceed in the proper court.

We have conferred that authority as well on the two appellate courts through Maryland Rule 8–132, with even greater emphasis, as, instead of leaving the transfer discretionary, as we did in Rule 2–327(a), we made the transfer mandatory. It is not infrequent that an appeal is filed with this Court that, absent the issuance of a writ of *certiorari*, can be heard only in the Court of Special Appeals, or, as in this case, that an appeal is filed with the Court of Special Appeals that can be heard only, if at all, by this Court. To achieve the same beneficent policy reflected in Rule 2–327(a), Rule 8–132 provides that, if either appellate court determines that an appellant has improperly noted an appeal to it but may be entitled to appeal to another court exercising appellate jurisdiction, the court "*shall not dismiss the appeal but shall instead transfer the action to the court apparently having jurisdiction*, upon the payment of costs provided in the order transferring the action." (Emphasis added). As noted, §§ 12–305 and 12–307(2) confer jurisdiction on this Court to review the judgment of a Circuit Court entered in an appeal from the District Court. In response to the motion to dismiss Appeal No. 1376, therefore, the Court of Special Appeals should have denied the motion and immediately transferred the case to this Court. Had it done so, the Clerk of this Court, in due course, would have treated the transfer as a petition for *certiorari* and given the county time to supplement the petition. Presumably, as we have already, on our own initiative, declared that the substantive issue raised in the case was worthy of our consid-

eration, we would have granted such a supplemental petition, and this case could have proceeded in an appropriate fashion.

█ The "fly in the ointment" was the striking of the notice of appeal by the Circuit Court. That was wholly improper. Maryland Rule 8–203 permits a Circuit Court to strike a notice of appeal to the Court of Special Appeals, but only for certain enumerated reasons: (1) if the appeal was not filed within the time prescribed by Rules 8–202 or 8–204—*i.e.*, if the appeal was untimely; (2) if the Circuit Court clerk has prepared the record pursuant to Rule 8–413 and the appellant has failed to pay for it; (3) if the appellant has failed to deposit with the clerk the filing fee required by Rule 8–201(b); or (4) if by reason of any other neglect on the part of the appellant the record has not been transmitted to the Court of Special Appeals within the time prescribed by Rule 8–412.

█ These reasons are both entirely collateral to the merits of the appeal and as objectively determinable by the Circuit Court as they are by the Court of Special Appeals. This Court has *not* permitted a Circuit Court to preclude review of its own decision by striking an appeal because it believes that the appellate court has no jurisdiction to hear the appeal or that the appellant is not entitled to take the appeal, or for any other reason that goes, directly or indirectly, to the merits of the appeal. If an appeal is subject to dismissal for any reason other than the four articulated in Rule 8–203, it is the appellate court that must order the dismissal. The order of the Circuit Court striking the notice of appeal was unauthorized, erroneous, and itself appealable.[10]

The problem, of course, is that the county failed to appeal that order, and we need to consider the effect of that omission.

---

10. The Circuit Court's action was particularly inappropriate in this case, as it was based principally on the assertion that the Court of Special Appeals had no jurisdiction to hear the appeal. As we have observed, in that situation, the Court of Special Appeals would have been required by Rule 8–132 to transfer the appeal to this Court, which *did* have jurisdiction, rather than to dismiss the appeal. The Circuit Court thus arrogated to itself a power that not even the Court of Special Appeals had.

In *Sullivan, supra,* 291 Md. 277, 434 A.2d 1024, we had before us a somewhat similar, but nonetheless distinguishable, situation. In an administrative proceeding, the Insurance Commissioner had apparently approved the termination of Sullivan's agency agreement with an insurance company, and Sullivan filed an action for judicial review. The Circuit Court affirmed the administrative decision, and Sullivan filed a timely appeal to the Court of Special Appeals. When it became clear that, due to a delay by the court reporter in preparing the transcript, the record could not be transmitted to the appellate court within the time allowed, Sullivan sought an extension. The Court of Special Appeals denied the extension because the request itself was untimely. Without notice to Sullivan, the Circuit Court, informed by its clerk that the record had not been timely transmitted, entered an order prepared by the clerk striking the notice of appeal. Being unaware of that order, Sullivan did not appeal it but petitioned this Court for *certiorari* to review the merits of the case. We granted the petition but, upon becoming aware of the procedural setting, limited our review to the procedural issues, including whether the dismissal of the appeal by the Circuit Court was reviewable in the absence of an appeal from that order.

The predecessor to Rule 8–203 that was in effect at the time did not require the Circuit Court to notify the parties before striking an appeal, which is presumably why Sullivan was not notified of the court's intended action. We concluded that, in the absence of an appeal from the order striking the appeal, the merits of that dismissal were not before the appellate court, but that, in the absence of notice, the order was void on due process grounds and could be collaterally attacked. *Sullivan, supra,* 291 Md. at 282, 287, 434 A.2d at 1027, 1030. We held (1) that the order striking the appeal was itself an appealable judgment (*Id.* at 284, 434 A.2d at 1028); (2) that the Circuit Court had no authority to strike the appeal except upon the grounds allowed in the Rule (*Id.,* 434 A.2d at 1028); (3) that the appeal was stricken on the ground that the record had not been timely transmitted due to some neglect or omission on Sullivan's part, which amounted to a determina-

tion that the fault was that of Sullivan and not the court reporter (*Id.* at 287, 434 A.2d at 1030); and (4) that the making of such a determination without notice to Sullivan amounted to "a denial of due process which voids the order striking the entry of appeal" (*Id.* at 287, 434 A.2d at 1030). Because we regarded the Circuit Court order as void, the appeal was still effectively pending before the Court of Special Appeals when we granted *certiorari. Id.* at 288, 434 A.2d at 1030.

This case is different. Rule 8–203, redrafted in light of *Sullivan,* requires that notice be given to the parties before an appeal is stricken by the Circuit Court. Notice was given to the county, and the county responded. There was no due process violation, and, although the Circuit Court's order was unauthorized and erroneous, it was not void and therefore not subject to collateral attack. A judicial decree or judgment made by a court lacking jurisdiction to enter it is void. *Fooks' Executors v. Ghingher,* 172 Md. 612, 619, 192 A. 782, 785 (1937). The term "jurisdiction" can have different meanings, however, depending upon the context in which it is used. It can refer to either "i) the *power* of a court to render a valid decree, [or] ii) the *propriety* of granting the relief sought." *First Federated Comm. Tr. v. Comm'r,* 272 Md. 329, 334, 322 A.2d 539, 543 (1974) (quoting *Moore v. McAllister,* 216 Md. 497, 507, 141 A.2d 176, 182 (1958)). It is only when the court lacks the first kind of jurisdiction which, in *Pulley v. State,* 287 Md. 406, 417, 412 A.2d 1244, 1250 (1980), this Court termed "fundamental jurisdiction" that its judgment is void. *First Federated, supra,* 272 Md. at 334, 322 A.2d at 543. As this Court recently reiterated in *Carey v. Chessie Computer,* 369 Md. 741, 802 A.2d 1060 (2002), "fundamental jurisdiction" refers to " 'the power to act with regard to a subject matter which "is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authority specially conferred." ' " *Id.* at 756, 802 A.2d at 1069 (quoting *Pulley, supra,* 287 Md. at 416, 412 A.2d at 1249) (quoting *Cooper v. Reynolds' Lessee,* 77 U.S. (10 Wall.) 308, 316, 19 L.Ed. 931, 932 (1870)). It is the power that

the law confers on a court to render judgments over a class of cases, within which a particular case may fall. *First Federated, supra,* 272 Md. at 335, 322 A.2d at 543.

 Thus, the main inquiry in determining "fundamental jurisdiction" is whether or not the court in question had general authority over the class of cases to which the case in question belongs. As previously stated, Maryland Rule 8–203 confers upon the Circuit Court the power to strike notices of appeal, but limits the exercise of that power to certain circumstances. Although the court erred in the manner in which it exercised its power, it acted within its general authority to strike notices of appeal when it issued its ruling. In *Pulley, supra,* 287 Md. at 417, 412 A.2d at 1250, this Court made clear that a court still retains its "fundamental jurisdiction" though its ability to exercise that power may be "interrupted" or circumscribed by statute or Maryland Rule. Indeed, this Court has repeatedly declined to hold void court or agency decisions that exceeded statutory limits but fell within the basic or fundamental jurisdiction of the court or agency. *See, e.g., Carey, supra,* 369 Md. 741, 802 A.2d 1060; *Board of License Comm'rs. v. Corridor Wine, Inc.,* 361 Md. 403, 761 A.2d 916 (2000); *Parks v. State,* 287 Md. 11, 410 A.2d 597 (1980); *Block v. State,* 286 Md. 266, 407 A.2d 320 (1979).

 The fact that the Circuit Court issued its dismissal order after the county had noted its appeal to the Court of Special Appeals is of no consequence. Once the appeal was pending, the Circuit Court was certainly prohibited from exercising its jurisdiction in a way that would affect the subject matter of the appeal or appellate proceeding. *See Jackson v. State,* 358 Md. 612, 620, 751 A.2d 473, 477 (2000); *see also Pulley, supra,* 287 Md. at 417, 412 A.2d at 1250. Any ruling to that effect, however, was reversible on appeal, not void for lack of jurisdiction. *Id. Accord Folk v. State,* 142 Md.App. 590, 598, 791 A.2d 152, 157 (2002). If the county desired to challenge the Circuit Court's order ... it was required to note an appeal. When it failed to do so within the 30 days allowed, the order became final; the appeal was

dismissed. Thus, when we issued a writ of *certiorari* on May 14, 2004 in Appeal No. 1376, that appeal was no longer pending in the Court of Special Appeals. There is nothing for us to review.

**WRIT OF *CERTIORARI* DISMISSED, WITH COSTS, AS HAVING BEEN IMPROVIDENTLY GRANTED.**