73 A.3d 1229

Paul EDERY, et al.

v.

David EDERY, et al.

No. 909, Sept. Term, 2012.

Court of Special Appeals of Maryland.

Sept. 3, 2013.

370

Eric H. Singer, Rockville, MD, for Appellant.

David Edery, Pro Se, for Appellee.

Panel: DEBORAH S. EYLER, MATRICCIANI, RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JJ.

## ON MOTION FOR RECONSIDERATION

EYLER, DEBORAH S., J.

Sultana Edery, a widow and resident of Montgomery County, died on February 21, 2009, leaving six surviving adult children: Michael Ben–Canaan, Hanna Ben–Yehuda, David Edery, Pinhas Edery (also known as Paul Pini Edery), Hanan Edery, and Shlomo (also known as Samuel) Edery.[1] Paul and

---

1. For ease of discussion we shall refer to the children by their first names.

Hanan are the appellants. David, Michael, Hanna, and Samuel are the appellees.

Mrs. Edery had executed a Will dated July 15, 2003 ("the Will"). In it, she nominated Hanan to be Personal Representative of her estate, and Paul to be Substitute Personal Representative if Hanan could not or did not want to serve.

On August 4, 2011, two and one-half years after Mrs. Edery's death, David filed in the Orphans' Court for Montgomery County a Petition for Probate of the Will, the Will, and a list of Interested Persons, which consisted of the six siblings. He asserted that Hanan had renounced his nomination as Personal Representative on November 20, 2008, even before their mother died, leaving Paul as the nominated Substitute Personal Representative under the Will. In a Petition to Appoint Personal Representative filed by David a few weeks later, on August 24, 2011, he alleged that in the time since their mother's death, neither Hanan nor Paul had done anything to submit the Will to probate. Instead, they had devoted their time to litigation against the other siblings over where their mother's body was to be buried.[2]

In his petition, David asked that he be appointed Personal Representative of the estate and that bond be waived. He attached written consents to his appointment as Personal Representative and to waiver of bond signed by Michael, Hanna, and Samuel.

On August 26, 2011, the Orphans' Court sent a Notice of Judicial Probate to all Interested Persons (*i.e.*, the siblings) notifying them that a petition for probate of the Will had been

---

2. The litigation was an action brought in the Circuit Court for Montgomery County by Hanan and Paul against the other siblings, seeking legal authority to decide the final disposition of Mrs. Edery's body, which Hanan and Paul wanted to be in Israel. The court ruled that the majority of the siblings would make that decision and enjoined Hanan and Paul from interfering. Mrs. Edery was buried in a cemetery in Adelphi, Maryland. Hanan and Paul appealed to this Court, which reversed and remanded based on improper evidentiary rulings. *Edery v. Edery*, 193 Md.App. 215, 996 A.2d 961 (2010). The trial on remand resulted in a second ruling in favor of the majority siblings, in an order entered on June 8, 2011.

filed by David and that a hearing would be held on October 19, 2011. The Register of Wills published in a local newspaper a notice of judicial probate of the Will, giving the date and time of the hearing.

On October 14, 2011, Paul filed a motion to postpone the hearing, which was denied. Then, on October 18, 2011, the day before the hearing, Hanan and Paul filed a Petition for Judicial Probate of the Will, in which they requested appointment of Paul as Personal Representative, based on his having the priority nomination in the Will.

The hearing went forward on October 19, 2011. It was attended by David, who was represented by counsel, Samuel, who was represented by the same counsel, and Paul and Hanan, who were *pro se*. Michael (who like the rest of the brothers, lives in Maryland) and Hanna (who lives in Israel) did not attend, although they too were represented by the same counsel as David.

David's lawyer explained that, given Hanan's renunciation of his nomination as Personal Representative in the Will, Paul would be the Substitute Personal Representative, as nominated; however, as already noted, Paul had done nothing to submit the Will to probate (until the day before the hearing—and counsel for David only received Paul's petition for probate at the hearing). David's lawyer further explained that, notwithstanding their ultimate defeat in the litigation over the burial location of Mrs. Edery's body, Hanan and Paul were still pursuing a related action, this time in Prince George's County, in which they were seeking to have her body exhumed.

Counsel for David continued by stating that his first contact with this case had taken place when he was called by lawyers in Israel representing Hanna for advice as to whether real property there that is titled in Mrs. Edery's name could be sold. He told the Israeli lawyers that no steps had been taken to probate the Will in Maryland, which is where Mrs. Edery had owned property and had died, and that nothing could be done until that happened. He further informed the Israeli

lawyers that submitting the Will to probate was Paul's responsibility, because Hanan had renounced his nomination as Personal Representative and Paul was the nominated Substitute Personal Representative. After that telephone call, David's lawyer contacted the other siblings, including Paul, from whom he received no cooperation. He told the court that he was asking that David or "any other person who wants to appoint be named, except for Paul, be named a personal representative."

In a good example of the total inability of the factions of parties to communicate civilly, Paul responded to David's lawyer's presentation to the court by saying, "[a]bout 90 percent of what [David's lawyer] said is just a lie" and was "character assassination." He spoke about the burial site of his mother's body, until the court interrupted, saying, "That's not really the issue here. The issue here is whether or not you should continue as the personal representative or whether or not somebody else should be the personal representative." [3] Paul responded that he "[is] the [Personal] Representative" and wanted to continue as such.[4] When asked why he had not done anything for years to bring a probate proceeding, he explained that he was in "shock and dismay" about his mother's body not being buried in Israel. He also claimed to have been told by someone in the Register of Wills office that all the property owned by his mother was in Israel. (In fact, David's lawyer just had explained that substantial property of the decedent was located in Maryland.) According to Paul, when he wrote letters to his sister, she called the Israeli police and accused him of threatening to kill her.

When Paul again returned to the subject of the burial site of his mother's body, the court again interrupted, saying:

No, stop. There's a lot of discord among you and your siblings, and, so, I think it would be in the best interest of

---

**3.** In fact, Paul had never been appointed Personal Representative, and hence had never served as such.

**4.** *See* note 3, *id.*

everyone if an outside personal representative be named. So, I'm naming someone else as personal representative. At that point, Paul complained that he thought the hearing merely was preliminary. The court responded: "It's a preliminary hearing in the sense that there's a request that you be removed as a personal representative." [5] The court announced that it was appointing C. Brian Carlin, Esquire, as Personal Representative of Mrs. Edery's estate, and that the hearing was concluded. That same day, the court issued and docketed an order appointing Mr. Carlin as Personal Representative, upon the posting of a bond ("the October 19, 2011 Order").

On October 31, 2011, Paul filed a handwritten "Motion to Reconsider" the court's October 19, 2011 Order.[6] The motion is lengthy, and contains many extraneous items of information, but asserts, basically, that he was nominated to be Substitute Personal Representative in the Will, the nominated Personal Representative had renounced the position, and therefore he (Paul) should serve in that capacity.

On November 7, 2011, Mr. Carlin filed a Petition For Appointment of Substitute Personal Representative. He asserted that, after receiving the October 19, 2011 Order, he reviewed the pleadings in the related lawsuits concerning Mrs. Edery's death and the disputes among her children, speaking to counsel for David. After taking into consideration his own caseload, he concluded he was "not in a position to devote the time [he] believes will be required of the Personal Representative to administer [Mrs. Edery's] estate." On that basis, Mr. Carlin "respectfully decline[d] the appointment and request[ed] the Court to appoint a substitute Personal Representative." Mr. Carlin added that he had not posted a bond

5. Once again, at that time, Paul had yet to be appointed Personal Representative of the estate; hence, the issue before the court could not have been whether he should be removed as Personal Representative.

6. For reasons that are unclear, Paul's "Motion to Reconsider" is date stamped November 11, 2011, but was accepted for filing and was docketed on October 31, 2011.

and therefore was not qualified to serve as Personal Representative; had not been issued Letters of Administration; and had not undertaken any of the duties of Personal Representative in the matter.

On November 9, 2011, David, Samuel, Michael, and Hanna filed an opposition to Paul's motion for reconsideration, adding that, in light of Mr. Carlin's request to withdraw as Personal Representative, a Personal Representative needed to be appointed.

On December 1, 2011, the court issued an order rescinding the October 19, 2011 Order, based on Mr. Carlin's request to withdraw, and appointing David as Substitute Personal Representative, upon posting bond. The same day, the court issued an order denying Paul's motion for reconsideration. Both orders were docketed on December 5, 2011. We shall refer to the order appointing David as Personal Representative as "the December 5, 2011 Order."

On December 12, 2011, Hanan filed a "Motion to Reconsider and Appointment of PR's," asking the court to reconsider and set aside the December 5, 2011 Order. Hanan represented that he never had renounced his nomination as Personal Representative under the Will. Rather, during a period when his mother was very ill and in a hospital Intensive Care Unit, he was "provoked" by David, who was threatening to kill Paul, and, having become "mentally drained by their antics," decided to "take a short break." Hanan further represented that he wished to "stay" as the Personal Representative nominated in the Will.

David, Samuel, Michael, and Hanna filed an opposition to Hanan's motion for reconsideration, attaching the November 20, 2008 document, signed by Hanan, entitled "Transfer of Power of Attorney," that they maintained was a renunciation of his nomination as Personal Representative in the Will. (The document does not say that, however. It is a transfer to Paul of Hanan's duties as power of attorney for their mother before she died. It has nothing to do with the Will.)

■ On January 3, 2012, the court issued and docketed an order denying Hanan's motion for reconsideration ("the January 3, 2012 Order"). On January 11, 2012, in the Orphans' Court, Paul filed a notice of appeal to this Court. His notice stated he was appealing the Orphans' Court's October 19, 2011 and December 1, 2011 Orders.[7] The appeal was docketed in this Court as Case No. 2858, September 2011 Term. Paul filed an Information Report, as required by Rule 8–205, on April 27, 2012.

On May 1, 2012, in the Orphans' Court, David and the siblings allied with him filed a motion to strike Paul's notice of appeal under Rule 6–464(a)(1) on the ground that it was not timely filed. Specifically, David alleged that, under Rule 8–202(a), Paul had 30 days from the entry of the October 19, 2011 Order and 30 days from the entry of the December 5, 2011 Order to appeal those orders to this Court, and he did not do so. Rather, he filed a notice of appeal on January 11, 2012, more than 30 days after each of the orders had been entered.

Two days later, on May 3, 2012, the Administrative Judge of the Orphans' Court issued an order directing Paul to show cause within 15 days why the January 11, 2012 notice of appeal should not be stricken for not having been filed within the time prescribed "by Rule 8–[2]02 or 8–204."

On May 21, 2012, Paul, by now represented by counsel, filed a response to the show cause order. He argued that the notice of appeal had been timely filed and, alternatively, and not at all helpfully to his cause, that if the notice of appeal was not timely filed it did not matter because the orders appealed

---

**7.** A notice of appeal, whether filed in the circuit court or the orphans' court, does not need to specify the orders appealed from, and operates as an appeal of any order that is appealable at that time. *Hudson v. Hous. Auth. of Balt. City,* 402 Md. 18, 27, 935 A.2d 395 (2007) (quoting *B & K Rentals and Sales Co. v. Universal Leaf Tobacco Co.,* 319 Md. 127, 132–33, 571 A.2d 1213 (1990)) (explaining that "an appeal from a final judgment ordinarily brings up for appellate review all [other] orders in the case.") (alterations in original); *B & K Rentals,* 319 Md. at 133, 571 A.2d 1213 ("Maryland Rule 8–202 does not require that a notice of appeal specify the judgment or order appealed from.").

from were not final judgments. He also argued, on the merits, that the Orphans' Court had acted beyond its jurisdiction in appointing Mr. Carlin as Personal Representative, and then David as Personal Representative, and that he intended to file additional papers in the Orphans' Court on issues pertaining to who is the proper Personal Representative of Mrs. Edery's estate. He asked for a hearing.

On May 29, 2012, in Case No. 2858, September 2011 Term in this Court, David and his allied siblings filed an Information Report.

The next day, May 30, 2012, the Orphans' Court issued and docketed an order granting David's motion to strike the January 11, 2012 notice of appeal, and directing that the notice of appeal be stricken ("the May 30, 2012 Order"). On June 5, 2012, the May 30, 2012 Order was received by this Court. Because the notice of appeal had been stricken, Case No. 2858, September 2011 Term in this Court was "administratively closed" effective retroactive to May 30, 2012.

In the meantime, on May 29, 2012, in the Orphans' Court, Paul and Hanan filed a "Motion to Reconsider *Ultra Vires* Appointment of David Edery as Personal Representative." This was Hanan's second motion asking the Orphans' Court to vacate its December 5, 2011 Order appointing David as Personal Representative, and Paul's first motion doing so. Paul and Hanan requested a hearing.

On June 19, 2012, without a hearing, the Orphans' Court issued an order, docketed the following day, denying Paul and Hanan's motion for reconsideration of the December 5, 2011 Order ("the June 20, 2012 Order"). Soon thereafter, on June 25, 2012, Hanan and Paul filed a notice of appeal to this Court, from the Orphans' Court's May 30, 2012 and June 20, 2012 Orders. This is the instant appeal.

Hanan and Paul pose the following questions for our review, which we have reordered and rephrased:

I.    Did the Orphans' Court err in striking the January 11, 2012 Notice of Appeal to this Court of the Decem-

ber 5, 2011 Order appointing David as Personal Representative?[8]

II.  If not, did the Orphans' Court err by implicitly ruling that the December 5, 2011 Order was a final judgment that could be appealed?

III.  Were there "irregularities," within the meaning of Rule 2–535(b), that required the Orphans' Court to grant the May 29, 2012 motion for reconsideration seeking to set aside the December 5, 2011 Order appointing David as Successor Personal Representative?[9]

We answer Question I in the affirmative, concluding that the Orphans' Court erred by striking the January 11, 2012 notice of appeal to this Court. On that basis, we shall vacate the Orphans' Court's May 30, 2012 Order. We also shall reopen the appeal in this Court that was designated Case No. 2858, September 2011 Term, and was administratively closed as a consequence of the Orphans' Court's erroneous ruling.

## DISCUSSION

Under Md.Code (1957, 2013 Repl.Vol.), section 12–501(a) of the Courts and Judicial Proceedings Article ("CJP"), "[a] party may appeal to the Court of Special Appeals from a final judgment of an orphans' court."[10] In all counties except Harford and Montgomery Counties, where the circuit court

---

8.  An order striking a notice of appeal is a final judgment that is appealable. *County Comm'rs of Carroll County v. Carroll Craft Retail, Inc.*, 384 Md. 23, 34, 862 A.2d 404 (2004); *Sullivan v. Insur. Comm'r*, 291 Md. 277, 284, 434 A.2d 1024 (1981).

9.  Hanan and Paul raised an additional question presented:
    Were there "irregularities," within the meaning of Rule 2–535(b), that required the Orphans' Court to grant the May 29, 2012 motion for reconsideration seeking to set aside its October 19, 2011 Order appointing Mr. Carlin as Personal Representative?
    As mentioned, the October 19, 2011 Order appointing Mr. Carlin as Personal Representative was rescinded by the Orphans' Court at Mr. Carlin's request, and therefore no longer exists.

10.  Under CJP section 12–501(b), an appeal to this Court is not allowed if judgment was made in a summary proceeding and on the testimony

sits as the Orphans' Court, when there is a final judgment, a party may opt, instead of noting an appeal to this Court, to take a *de novo* appeal to the circuit court. CJP § 12–502(a). *See also* Rule 6–463.

As counsel for Hanan and Paul wisely conceded at oral argument before this Court, the October 19, 2011 Order of the Orphans' Court appointing Mr. Carlin as Personal Representative of Mrs. Edery's estate was rescinded, at Mr. Carlin's request, and therefore no longer exists to be challenged on appeal; and no one (including Mr. Carlin) wants Mr. Carlin to serve as the Personal Representative of Mrs. Edery's estate anyway. Thus, as the parties acknowledge, our focus is on whether the Orphans' Court erred in striking the January 11, 2012 notice of appeal of the December 5, 2011 Order appointing David as Personal Representative of Mrs. Edery's estate.

The rules pertaining to the orphans' court are set forth in Title 6 of the Maryland Rules. Under Rule 6–461, certain rules found in Title 2 of the Maryland Rules, which governs civil actions, apply or can be applied in proceedings in the orphans' courts. Subsection (a) states that discovery is available, under Title 2, Chapter 400, in any court proceeding on a contested matter. Under subsection (b), Rule 2–501, governing motions for summary judgment, applies. Most relevant for our purposes, subsection (c) states:

> **Motions to alter, amend, or revise a final order.** Rules 2–534 and 2–535 apply to a final order entered pursuant to Rule 6–171.[11]

Finally, subsection (d) provides:

> **Other rules.** In any proceeding in which an issue of law or fact is in controversy, the court, on petition of a party or on

---

of witnesses, unless the party desiring to take the appeal gives immediate notice of that intention and requests that the testimony be reduced to writing. In this case, the October 19, 2011 Order was issued after a hearing in which no testimony was taken; and the December 5, 2011 Order was issued without a hearing.

11. Rule 6–171, entitled "Entry of Order or Judgment" pertains in relevant part to orders or judgments entered by the orphans' court:

its own motion and after notice to all persons who may be affected by the proceeding and an opportunity to be heard, may apply other rules in Title 2. The petition and notice shall state the specific rules in Title 2 that the court is requested to apply.

Subsections (b) and (c) were added to Rule 6–461 by the Court of Appeals on November 12, 2003, effective January 1, 2004 ("the January 2004 Amendment"). Before then, a post-judgment motion under Rule 2–534 or 2–535 only could be filed by means of the process allowed in what now appears in subsection (d) of the Rule. (Subsection (d) had been subsection (b) prior to the January 2004 Amendment.)

Rule 2–534 allows for the filing of a motion to alter or amend a circuit court judgment. It states, in relevant part:

In an action decided by the court, on motion of any party filed within ten days after entry of judgment, the court may open the judgment to receive additional evidence, may amend its findings or its statement of reasons for the decision, may set forth the additional findings or reasons, may enter new findings or new reasons, may amend the judgment, or may enter a new judgment . . .

Rule 2–535 governs the revisory power of the circuit court, granting the court broad discretion to revise its judgment, either in a court trial or a jury trial, for 30 days, under subsection (a), and thereafter much more limited revisory power in cases of fraud, mistake, or irregularity, newly discovered evidence, and clerical mistakes (subsections b, c, and d, respectively).

As noted above, CJP section 12–501(a), which allows an appeal from a final judgment of the orphans' court to this Court, does not specify a time limit for filing the notice of appeal. The general rule establishing the deadline for filing a notice of appeal to this Court is set forth in Rule 8–202(a),

---

(a) **Direction by Court.** After determination of an issue, whether by the court or by the circuit court after transmission of issues, the court shall direct the entry of an appropriate order or judgment.

which states that, unless otherwise provided, "the notice of appeal shall be filed within 30 days after entry of the judgment or order from which the appeal is taken." Rules 2–534 and 2–535 are directly relevant to the time for filing a notice of appeal to this Court under Rule 8–202, because subsection (c) of that Rule creates an exception to the 30 day filing deadline for post-judgment motions, such as motions under Rule 2–534 and 2–535, that are timely filed, *i.e.*, filed within 10 days of the entry of the judgment appealed from. Subsection (c) states:

In a civil action, when a timely motion is filed pursuant to Rule 2–532, 2–533, or 2–534, the notice of appeal shall be filed within 30 days after entry of (1) a notice withdrawing the motion or (2) an order denying a motion pursuant to Rule 2–533 or disposing of a motion pursuant to Rule 2–532 or 2–534.

(Likewise, the exception applies when a motion under Rule 2–535 has been filed within 10 days after entry of judgment. *See* Committee note to Rule 8–202(c)). Thus, when a post-judgment motion has been filed within 10 days of the entry of judgment, the deadline for filing a notice of appeal to this Court is not 30 days from the date of entry of judgment; it is 30 days from the notice of withdrawal of the post-judgment motion or the ruling on the post-judgment motion.

As noted above, the January 2004 Amendment to Rule 6–461 specifically added Rules 2–534 and 2–535 to those rules in Title 2 of the Maryland Rules that apply to proceedings in the orphans' court. The minutes of the January 3, 2003 meeting of the Court of Appeals Standing Committee on the Rules of Practice and Procedure ("the Rules Committee"), in which what became the January 2004 Amendment to Rule 6–461 was discussed, state that subsection (b) and (c) were being added "to clarify that motions for summary judgment and motions to alter, amend, or revise a final order may be filed in the orphans' court without the necessity of following the procedures" in subsection (d) of that Rule. In other words, a party would no longer have to obtain permission of the orphans' court to file a Rule 2–534 or 2–535 motion (or a motion for summary judgment). The minutes do not contain any express

reference to the fact that a timely filed Rule 2–534 or 2–535 motion operates to toll the deadline for filing a notice of appeal to this Court under Rule 8–202(c). However, they contain a discussion of the time by which a Rule 2–534 or 2–535 motion would have to be filed, that is, when the 10 day period for timely filing such a motion would start to run; and that discussion resulted in the reference in subsection (c) to "a final order [of the orphans' court] entered pursuant to Rule 6–171." *See* Court of Appeals Standing Committee on Rules of Practice and Procedure, minutes, at 29–31 (January 3, 2003).

■ Before the January 2004 Amendment to Rule 6–461 making motions to alter, amend, or revise under Rules 2–534 and 2–535 automatically applicable to proceedings in the orphans' court, the law was well-established that a notice of appeal to this Court from a final judgment of the orphans' court had to be filed within 30 days of the entry of the orphans' court's judgment, under the general provision of Rule 8–202(a), and that revisory motions filed in the orphans' court did not operate to toll that deadline. *See Grimberg v. Marth,* 338 Md. 546, 552–53, 659 A.2d 1287 (1995) (holding that revisory motion filed within 10 days of entry of final judgment in orphans' court did not toll the running of the 30–day period, under Rule 8–202(a), in which to note an appeal from that judgment to Court of Special Appeals); *Anthony v. Clark,* 335 Md. 579, 644 A.2d 1070 (1994) (same). The law also was well-established, as embodied in Rule 8–202(c), that a timely filed post-judgment motion under Rule 2–534 and/or 2–535, tolls the period of time in which to file a notice of appeal to this Court. We conclude, therefore, that by adopting the January 2004 Amendment specifically applying Rule 2–534 and 2–535 motions to final judgments entered by an orphans' court, the Court of Appeals intended to, and did, transport the tolling effect of those two rules, under Rule 8–202(c), to appeals to this Court from final judgments of the orphans' court. Thus, since the adoption of the January 2004 Amendment, when the entry of a final judgment by the orphans' court is followed by the filing, within 10 days, of a Rule 2–534 or 2–535 motion, the deadline for noting an appeal to this Court from the orphans'

court's judgment is 30 days from the notice of withdrawal of the motion or 30 days from the ruling on the motion, under Rule 8–202(c).

In the case at bar, Hanan filed a "Motion to Reconsider" the Orphans' Court's December 5, 2011 Order. That motion qualified as a Rule 2–534 motion. Hanan's motion was filed on December 12, 2011, which was within 10 days of the entry of the December 5, 2011 Order. Therefore, under Rule 8–202(c), Hanan's motion tolled the time for filing a notice of appeal to this Court from the Orphans' Court's December 5, 2011 Order until 30 days after the motion was denied. The Orphans' Court entered its order denying Hanan's motion on January 3, 2012. To be timely, the notice of appeal of the December 5, 2011 Order had to be filed within 30 days thereafter. In fact, the notice of appeal was filed on January 11, 2012, which was within that 30–day period, and therefore was timely filed.

The Orphans' Court specified in its order striking the January 11, 2012 notice of appeal that it was not timely filed. As we have explained, the notice of appeal was timely, because the time for filing it was tolled by Hanan's having filed a timely 10–day post-judgment motion.[12] Accordingly, the Orphans' Court erred in striking the January 11, 2012 notice of appeal to this Court of the December 5, 2011 Order.

Because the Orphans' Court erred in striking the notice of appeal, we shall vacate its May 30, 2012 Order. We will not remand the case to the Orphans' Court, however, as under the circumstances that is not the proper remedy. As explained, the January 11, 2012 notice of appeal filed by Paul gave rise to Case No. 2858, September 2011 Term in this Court. That appeal was pending and progressing until the Orphans' Court

---

12. The filing of a timely post-judgment motion by any single party will toll the time for noting an appeal under Rule 8–202(c) for all parties. *Waters v. Whiting,* 113 Md.App. 464, 474, 688 A.2d 459 (1997). Thus, when Hanan filed a timely motion for reconsideration, the time for filing a notice of appeal was tolled for any party who wished to note an appeal, including Paul.

struck the notice of appeal. When that happened, the appeal was administratively closed. It was not dismissed, and it was not closed for any reason other than the (erroneous) striking of the notice of appeal. If the Orphans' Court had denied the motion to strike the notice of appeal, as it should have, the appeal in Case No. 2858, September 2011 Term would have proceeded in this Court in the usual fashion, without being derailed. Therefore, the proper remedy upon the vacation of the May 30, 2012 Order striking the notice of appeal is to place the parties in the position they would have been in had the error not occurred, by reopening Case No. 2858, September 2011 Term in this Court so that appeal may proceed as it should have absent the Orphans' Court's error.

We shall make brief mention of one of the other issues raised on appeal. Hanan and Paul's second question presented, which they describe as an "alternative" argument, concerns the appealability of the December 5, 2011 Order appointing David as Personal Representative. They make the curious argument that, if the Orphans' Court did not err in striking the January 11, 2012 notice of appeal, that did not matter, because the December 5, 2011 Order was not a final judgment and therefore could not be appealed under CJP section 12–501(a).

The argument is curious because, even as an alternative argument, it is of no help whatsoever to Paul and Hanan. If the December 5, 2011 Order is not a final judgment and therefore is not appealable under CJP section 12–501(a), that leaves them without the appeal they wish to pursue. We comment on this only to point out, however, that whether the December 5, 2011 Order is a final judgment within the meaning of CJP section 12–501(a) would not be a proper issue for this Court to decide in this appeal in any event. Under Rule 8–203(a), a "lower court," which includes a circuit court and an orphans' court, may strike a notice of appeal on four specified bases, including that the notice of appeal was not timely filed. Likewise, Rule 6–464 provides similar bases on which an orphans' court may strike a notice of appeal. These specified bases are the only grounds on which a notice of appeal may be

stricken by a circuit court or an orphans' court. They do not include that the judgment or order from which the appeal has been taken is not appealable.

■ As the Court of Appeals explained in *County Comm'rs of Carroll County v. Carroll Craft Retail, Inc., supra,* 384 Md. 23, 862 A.2d 404, only the appellate court in which an appeal is pending can decide whether the judgment from which the appeal is taken is subject to appeal:

> The [bases on which a lower court may strike a notice of appeal under Rule 8–203] are both entirely collateral to the merits of the appeal and as objectively determinable by the [lower court] as they are by the Court of Special Appeals. This Court has *not* permitted a Circuit Court to preclude review of its own decision by striking an appeal because it believes that the appellate court has no jurisdiction to hear the appeal or that the appellant is not entitled to take the appeal, or for any other reason that goes, directly or indirectly, to the merits of the appeal. If an appeal is subject to dismissal for any reason other than the four articulated in Rule 8–203, it is the appellate court that must order the dismissal.

*Id.* at 42, 862 A.2d 404 (emphasis in original). The same reasoning applies when a notice of appeal is stricken by an orphans' court, pursuant to Rule 6–464, which, as noted, provides specific grounds for striking a notice of appeal, none of which include that the appeal is not from a final judgment or appealable order. Thus, if there is any question whether the December 5, 2011 Order appointing David as the Personal Representative of Mrs. Edery's estate is a final judgment that is appealable under CJP section 12–501(a), that question must be decided by this Court in Case No.2858, September 2011 Term.[13, 14]

---

**13.** We note that it is well-established that an order appointing a Personal Representative is a final order for purposes of appealability. *See Carrick v. Henley,* 44 Md.App. 124, 127, 407 A.2d 765 (1979).

**14.** The final contention advanced by Hanan and Paul, concerning irregularities within the meaning of Rule 2–535(b), is moot given our

MAY 30, 2012 ORDER OF ORPHANS' COURT FOR
MONTGOMERY COUNTY STRIKING JANUARY 11, 2012
NOTICE OF APPEAL IN COURT OF SPECIAL AP-
PEALS CASE NO. 2858, SEPTEMBER 2011 TERM, IS
VACATED. APPEAL IN CASE NO. 2858, SEPTEMBER
2011 TERM IS REOPENED. COSTS TO BE PAID BY
THE APPELLEES.

disposition of this appeal. *See, e.g., Collins v. State,* 52 Md.App. 186,
206, 447 A.2d 1272 (1982), *aff'd on other grounds,* 296 Md. 670, 464
A.2d 1028 (1983).